PRUDENTIAL INSURANCE COMPANY OF AMERICA, complainant-appellant,

*v.*

WILLIAM CONNALLON, defendant-appellee.

[Submitted October term, 1930. Decided May 18th, 1931.]

*Messrs. Perkins & Drewen,* for the complainant-appellant.

*Mr. Donald M. Waesche (Mr. James F. Maloney,* of counsel,) for the defendant-appellee.

The opinion of the court was delivered by

DALY, J.

The complainant issued a policy of insurance, dated August 6th, 1928, on the life of Martin Connallon, wherein the defendant, William Connallon (his brother), is named as beneficiary.

The insured died June 23d, 1929, and the complainant, by its bill filed August 2d, 1929, sought a decree that the policy never took effect, because at its date the insured was not in sound health, and that the policy was obtained through fraudulent representations made by the insured as to his condition of health and freedom from certain diseases, and prayed a restraint against the beneficiary from bringing suit on the policy and for surrender of the policy for cancellation. A decree was entered in chancery dismissing the bill and this appeal is taken from such decree.

The policy of insurance contains a clause which reads: "This policy shall not take effect if on the date hereof the insured be not in sound health." The vice-chancellor who heard this case properly held that the insured was not in sound health either at the date of the application of the policy or at the date of the policy and that the statements made by him at the date of the application of the policy were knowingly false. The insured died about a year after making the application, and the testimony conclusively shows that he had been a heavy drinker for many years before his death; that he had been placed in a hospital several times because of acute alcoholism; that he was affected with progressive pulmonary tuberculosis; and that his appearance was such that it did not require a doctor to inform his brother, the beneficiary, or any intelligent observer that this unfortunate man was a physical wreck at the time and long before the policy of in-

surance was issued. The form of policy in this case is one issued by the complainant without medical examination.

One of the general provisions of the policy is as follows: "This policy shall be incontestable after one year from its date of issue, except for non-payment of premium." The complainant contends this provision cannot be given effect because the policy did not take effect, since the insured was not in sound health on the date of the policy; that for this reason the policy was *ab initio* void and no provision thereof could become operative.

In answer to this contention, the vice-chancellor clearly reasoned and soundly concluded in the following language: "The substance of the complainant's first contention is that the incontestability clause was intended to be conditional, that is, conditional upon the policy taking effect. Under such construction, the clause is deceptive, meaningless and ineffectual to the insured because although it purports to state that the policy shall be incontestable for any reason after one year, it shall nevertheless be contestable at any time on the ground herein urged. If the policy is to be regarded as never in force so as to permit the insurer to show that the insured was not in sound health at its date, although the insured's death may not occur until many years after the policy date, then an incontestability clause is of but little value and is a deceptive inducement to an insured to accept it. I think the sound health clause here in question must be read with the incontestability clause and that the two, taken together, must be construed to mean that if within one year after the complainant issued its policy, it discovered that the insured was not in sound health at its date, the contract could be rescinded, but that when one year had elapsed the policy would be considered in force and incontestable for any reason, except for non-payment of premium."

Our supreme court, in the case of *Drews* v. *Metropolitan Life Insurance Co., 79 N. J. Law 398,* substantially held that such an incontestability provision as is present in this case limits all defenses, including fraudulent representations as to physical condition, except non-payment of premium, to the

period agreed upon. In that case the court approvingly cited *Wright* v. *Mutual Benefit Life Association of America, 118 N. Y. 237, 243,* where a similar contract was under consideration and where it was held: "It is not a stipulation absolute to waive all defenses and condone fraud. On the contrary, it recognizes fraud and all other defenses, but it provides ample time and opportunity within which they may be, but beyond which they may not be, established. It is in the nature of, and serves a similar purpose as, statutes of limitations and repose, the wisdom of which is apparent to all reasonable minds." The language of the incontestability clause is such that when the insurer entered into the contract it agreed not to contest the policy after one year from its date of issue, even though it should subsequently appear that some of the representations as to the health of the insured were not true. If within the one year it were discovered that some of the material statements were not correct or wholly true, their falsity would be a good ground for rescinding the contract during that time, but the statements do not amount to a waiver of the benefit of a covenant not then in existence, and which was made for the benefit of the assured upon conditions which it was agreed should not destroy the contract after the specified period. *Drews* v. *Metropolitan Life Insurance Co., supra.*

This then leaves the question whether the bill in chancery to contest the policy is a contest made after one year from its date of issue. As stated, the bill was filed August 2d, 1929, the policy is dated August 6th, 1928.

Connallon, the defendant, had at least four other policies upon his brother's life; all of which were more than a year old at the time of the brother's death and all of which were paid to Connallon as the beneficiary thereof. He, the defendant, testified that on June 11th, 1928, the complainant's agent who solicited the insurance for which the policy in question was issued, showed him an application for insurance bearing the signature of the insured and that the defendant thereupon paid the agent $2.94 as the first monthly premium and received the agent's receipt therefor, which

receipt the defendant produced and put in evidence. The receipt is a printed form used by the complainant and bears date June 11th, 1928. It contains the following provision: "It is understood that this payment is equal to the full first monthly premium on said policy * * * the insurance shall take effect from the date of the application, in accordance with the provisions of the policy applied for, provided said application is approved and accepted * * * and provided the life proposed was in sound health on the date of the application." There is no proof that would justify a belief that the insured ever made or signed an application as indicated in this receipt. The defendant further testified that before he received the policy (which was delivered to him and not to the insured), he paid another premium and he produced and put in evidence an ordinary slip of paper purporting to be an agent's receipt for such premium, dated July 16th, 1928. When the policy was delivered to the beneficiary, he received with it a premium receipt book, in which were entered the two payments of June and July, 1928, and which receipt book gave the date of the policy as August 6th, 1928. No form of application for the insurance was produced other than an original application produced by the complainant, signed by the insured. Attached to it is the agent's certificate under date of July 23d, 1928, certifying to the applicant's signature and to the payment of a monthly premium in advance. It was testified to that the insured actually signed this application on July 25th, 1928. The application contains the following provision: "It is understood and agreed * * * that if at the time of signing this application the full first premium is paid, the insurance shall take effect from the date of this application in accordance with the provisions of the policy hereby applied for, provided the life proposed is in sound health on the date of this application and provided this application is approved and accepted at the home office." The complainant says that it was on this application that its policy dated August 6th, 1928, was issued. The pertinent language of the receipt of June 11th, 1928, and of the application under date of July 23d, 1928, is the same,

and, as the vice-chancellor correctly found, it is unnecessary to determine whether an application for this insurance was actually made June 11th, 1928, as indicated by the premium receipt of that date, or whether, if so made, it was accepted and the policy issued thereon, because if the incontestability clause began to run from either of those dates the complainant cannot be heard on its bill filed August 2d, 1930.

The court below held that "the date of a policy does not necessarily determine its 'date of issue.' The incontestability clause as written by the complainant apparently recognizes a distinction, because it is not stated to run from the date of the policy but from the date the policy was issued. The insurer and insured may agree that a policy shall issue, that is, become effective, as of an earlier date or later date than the day it is signed by its officers. Here the complainant agreed that upon payment of the first full premium, the insurance should take effect from a date earlier than the date given to the policy, namely, the date of the application, provided the application was accepted. The premium was paid, the risk was accepted and the policy was delivered, and to ascertain the true date of issue the policy must be read with the application. Thus the complainant made the date of the application the point of time when the policy became effective and that is the date from which the year began during which the policy was contestable." With this conclusion as to the incontestability clause we cannot agree.

It may be that under certain circumstances the date of a policy would not necessarily determine its date of issue. A policy might be dated and signed and not parted with by the company for a long time, raising a question in such a case as that whether the date and signing of the policy or the date of its subsequent delivery should be regarded as its date of issue. But surely a policy is not effectively issued, is not legally sent forth, until it has been properly signed and executed by the proper officers of the company. In this case the signing and execution was done on August 6th, 1928, and the policy was not delivered to the beneficiary until after it was

signed and executed. There is no evidence that the insurer and the insured agreed that this policy "should issue" (if that were possible) before the date it was signed by its officers. It is true that if the applicant be of sound health and he pays the full first premium, and his application be approved at the home office, the insurance takes effect from the date of the application, but there is nothing in the language of the application which makes its date and the date of the issue of the policy the same. It is the policy, alone, and not the application, that specifically fixes the time limitation as to contest of the policy. It could have been declared in the policy that the time limitation of contest should run from any reasonable date fixed therein; and it was specifically declared therein that it (the policy) shall be incontestable after one year from its (the policy's) date of issue—not one year after the making or date of the application.

We hold that this policy did not issue until it was signed and executed by the proper officers; that it was signed and executed by such officers on August 6th, 1928; that it was not issued or delivered to the insured or the beneficiary until after its signing and execution on that date, and that its date of issue under the incontestability provision of the policy is the date of issue as specified in the policy itself. *Mutual Life Insurance Company of New York* v. *Hurni Packing Co., 263 U. S. 167; 68 L. Ed. 235.*

The decree below should be reversed, with costs.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, DEAR, JJ. 10.