CONTINENTAL CASUALTY COMPANY, complainant-appellant,

*v.*

MORRIS FELDMAN, defendant-respondent.

[Argued October 16th, 1935. Decided January 31st, 1936.]

*Messrs. McCarter & English,* for the appellant.

*Mr. Morton C. Steinberg,* for the respondent.

PER CURIAM.

This appeal brings up a decree of the court of chancery dismissing the bill of complaint which sought to have canceled

a certain policy of insurance in which the defendant-respondent, Morris Feldman, was insured against loss of limbs, sight or time, which resulted from accidental injury or from sickness. Sickness in the policy is defined as "a sickness contracted and commencing while this policy is in force." It appears that suit was begun to recover damages in the sum of $200 per month beginning September 1st, 1933, upon an allegation that the assured lost the sight of both eyes by reason of having contracted a sickness or illness called progressive cataracts on both eyes, which completely disabled him.

The appellant asserts that in April, 1919, the assured had been treated for some eye trouble by Dr. Charles F. Adams, and that in his answers on the appellant's medical blank, under date of February 12th, 1924, he did not give the names and addresses of all physicians and practitioners consulted by him during the preceding five years. It appears that when the medical examiner, Dr. Carpenter, examined him he tested his vision and on the medical blank, under part 3, No. 13, there appears: "Vision normal. Wears glasses. Nearsighted." Dr. Carpenter in his testimony said that the assured, when he examined him, wore glasses and was apparently nearsighted. He further said he examined his sinuses and other parts of his body. It would appear, therefore, that there was no conscious and intentional failure on the part of the assured to disclose any known infirmity. Dr. Adams said that he did not tell assured, when he treated him in 1919, just what his trouble was, and it is quite consistent with the whole case to believe that the assured thought that he had only some ordinary difficulty in vision due to what is known as nearsightedness.

The assured asserts that he did not look closely or at all in fact, at the answers on the application, which were entered by the agent who sold him the insurance, but he testified that Dr. Carpenter asked him: "When did you last change glasses?" and he said: "Four or five years ago," and when asked by whom, he told the examiner "in Trenton, New Jersey, Dr. Adams." It appears in the testimony of Dr. Adams that at the time he treated the assured he had no reason to believe that he had cataracts or any such trouble, so that it

cannot be said, as a matter of fact, that at the time the application was made, the assured was suffering from cataracts.

The court below found that respondent's failure to give the physician's name in the application was not a fraud, he having disclosed it to the medical examiner and the medical examiner having been put on his guard by the wearing of the glasses. It seems impossible to know whether or not the cataracts were then present, but from the testimony it could be found that they were not. Under section 40, line 34 of the policy, it is provided: "After one year from its date this policy shall be incontestable as to the time of origin of any disability commencing thereafter." Obviously the disability commenced more than a year after the issuance of the policy, and the time of origin is not subject to attack, so that the only question then is as to fraud in the answer to this question. The assured stated that he told Dr. Carpenter that Dr. Adams had examined him. As stated by the vice-chancellor, the failure of Dr. Carpenter to record this did not invalidate the policy, because there is no evidence of lack of good faith on the part of the assured. *Shapiro* v. *Metropolitan Life Insurance Co., 114 N. J. Eq. 378.*

The decree is affirmed.

*For affirmance*—THE CHIEF-JUSTICE, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 12.

*For reversal*—None.