Complainant seeks concellation of a health policy issued by it to defendant August 3d 1925, and also a money decree for the sum paid out under the policy. The bill is based on alleged fraud in defendant's answers to questions contained in the application which is annexed to and made a part of the policy, and on allegedly false statements made to the medical examiner, but which are not annexed to or included in the policy. A preliminary question relates to the statements to the medical examiner.
The policy contains the following stipulation: "No statement made by the applicant for insurance, not included herein, shall avoid the policy or be used in any legal proceeding hereunder." If complainant issued the policy in reliance on statements made to the medical examiner, it should have included them in the policy, by endorsement or otherwise. Not having done so, they cannot be used to avoid the policy. Prudential Insurance Co. v.Connallon, 106 N.J. Eq. 251; 108 N.J. Eq. 316; Metropolitan LifeInsurance Co. v. Lodzinski, 122 N.J. Eq. 404, 408.
The application annexed to the policy runs thus:
"I hereby apply to the Massachusetts Accident Company of Boston, Massachusetts, for a policy to be based upon the following representation of facts. I understand and agree that the right to recover under any policy which may be issued upon the basis of this application, shall be barred in the event that any of the following statements, material either to the acceptance of the risk or to the hazard assumed by the company, is false, or in the event that any of the following statements is false and made with intent to deceive."
Then follow a number of questions and answers of which I quote only one:
"Have you, within the past ten years, had medical or surgical advice or treatment or any departure from good health? If so, state particulars.
(Month-Year) (Nature of (Duration of (Name and address
About two ailment) ailment) of attending
years ago Infected physician)
 foot. Dr. C. Englander
 Newark, N.J."
 *Page 532 
Then follow three blank lines apparently for additional ailments.
Defendant had been a captain of infantry in the World War. Throughout the month of October, 1918, he was continuously at the front in the Argonne, much of the time under fire, and occasionally exposed to gas. He was honorably discharged June, 1919, and resumed the practice of law in Newark. Beginning in the fall of that year and continuing into the spring of 1922, he had a chronic cough and frequently suffered from severe pains in his back and chest. He consulted at least five physicians — Woolman, Coe, Reinfeld, Stern and Englander. Medicines and other treatment were prescribed. Dr. Coe examined him by X-ray. In January, 1922, he applied to the government for compensation as a disabled veteran, but his application was denied July 27th, 1922, on a rating of temporary partial disability of one per cent. due to chronic bronchitis. Conversely, he was rated ninety-nine per cent. sound.
Like many another soldier, Captain Stone was deeply affected by the strain of battle. He was nervous, neurotic. He feared that his lungs had been injured by gas and that tuberculosis would develop in him, as it did in so many of his comrades. He undoubtedly thought himself a sick man in 1920 and 1921, and until he received the re-assuring rating from the Veterans' Bureau July, 1922. By this time, his nerves had doubtless recovered; he felt good; the fear of tuberculosis vanished and he was, and considered himself to be, a normal, healthy man, from then until the time of his application for the policy, and for a year thereafter, when he became incapacitated by arthritis. That condition disappeared and he continued in good health for another ten years, until he was stricken with the malignant disease from which he now suffers.
It is obvious that defendant, within the ten years preceding his application for the policy, had had departures from good health beyond the infected foot mentioned in his answer. But the answer is not false so as to defeat the insurance unless his infirmities were such as to affect his general health and were not, in their nature, simply transitory or temporary *Page 533 
indispositions. Clayton v. General Accident, c., AssuranceCorp., 104 N.J. Law 364, 366. The questions in the application, relating to defendant's health, were necessarily directed to his knowledge only. They sought to probe his mind and required only that he answer truthfully to the best of his belief. Shapiro v.Metropolitan Life Insurance Co., 114 N.J. Eq. 378. Defendant testified that in 1925, when the policy was written, he was convinced that the indispositions which formerly had so disturbed him, were largely fanciful. I surmise his cough was induced by too many cigars and his aches, diagnosed as neuritis, resulted from hardship and exposure and frayed nerves. Still, it is difficult to classify that condition which lasted more than two years, as trivial, like a cold that clears up in a couple of days.
The question whether defendant had had medical advice or treatment, called for more than an honest opinion — it inquired for a fact within the applicant's positive knowledge. While it appears from the cases already cited that a policy will not be avoided for failure to disclose treatment by a doctor for a slight cold, the present case is not in that category. I am satisfied that the frequent medical consultations, examinations and treatments from 1919 to 1922 were a fact material to the risk. United Life, c., Insurance Co. v. Winnick, 113 N.J. Eq. 288; Equitable Life Assurance Society v. Gutowski, 119 N.J. Eq. 181.
But defendant argues that the question under discussion called for the particulars of but one instance of medical treatment and nothing more, and so was answered truthfully when defendant replied that he had consulted Dr. Englander for an infected foot.Henn v. Metropolitan Life Insurance Co., 67 N.J. Law 310. I think that such an interpretation of the question is inadmissible; the question demanded full disclosure.
Defendant attempted to prove that in 1926, or thereabouts, complainants ascertained the medical history of defendant and thereafter accepted premiums and so elected to abide by the policy. I have carefully weighed the evidence and find the defense is not sustained.
Decree for complainant. *Page 534