Cohen et al. *v.* Metropolitan Life Insurance Company, Appellant.

Argued October 12, 1933.

Before TREXLER, P. J., KELLER, CUN-NINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Arthur G. Dickson,* and with him *Leroy A. Lincoln,* for appellant.—The incontestable clause is not a bar to the defense set forth as new matter. Thomas v. Metropolitan, 135 Kans. 381; Jefferson Standard Life v. Smith, 157 Ark. 499; McKenna v. Metropolitan, 220 N. Y. S. 568; McDonnell v. Mutual Life, 131 App. Div. 643; Van Saun v. Metropolitan, 239 N. Y. S. 698; Kocak v. Metropolitan, 258 N. Y. S. (City Court) 937; Jordan v. United States, C. C. A. 9, 36 Fed. 43; Crawford v. United States, C. C. A. 2, 40 Fed. (2d) 199.

*Herman Bronsweig,* for appellee, cited: Francis v. Prudential Ins. Co., 243 Pa. 380; Smith v. Life Ins.

Co., 103 Pa. 177; Yost v. Anchor Fire Ins. Co., 38 Pa. Superior Ct. 594; Kocak v. Metropolitan Life Ins. Co., 144 Misc. 422; Hurnie Packing Co. v. Mutual Life Ins. Co., 44 Supreme Court 90; Jenson v. United States, 29 Fed. (2d) 952; Lawler v. Ins. Co., 59 Pa. Superior Ct. 409.

OPINION BY CUNNINGHAM, J., March 3, 1934:

Metropolitan Life Insurance Company has appealed from a summary judgment entered by the court below for want of a sufficient affidavit of defense to a suit in behalf of the beneficiaries named in one of its Intermediate Twenty Year Endowment (Monthly Premium) policies, in the amount of $1,000. The policy was issued February 1, 1931, to Mollie Cohen, and named her minor sons, Louis I. Cohen and Harry Cohen, as the beneficiaries; the insured died within two years of the date of issue of the policy, namely, on May 21, 1932. The following incontestable clause was one of the provisions of the policy:

"This policy shall be incontestable after it has been in force for a period of two years from its date of issue, except for non-payment of premiums, and except as to provisions and conditions relating to benefits in the event of total and permanent disability, and those granting additional insurance specifically against death by accident, contained in any supplementary contract attached to, and made part of, this policy."

The affidavit of defense admitted the facts above stated and, in addition thereto, that all premiums had been paid and the beneficiaries had performed all the conditions required upon their part.

Appellant also admitted in the tenth paragraph of its affidavit that it had not cancelled or rescinded the policy within two years from the date of its issue, but, with respect to the incontestability clause, averred

the policy had not been "in full force and effect during the said period of two years" because the death of the insured occurred within that period.

It then proceeded to "contest" the policy by averring that the insured had made, in the application attached to the policy, certain false and fraudulent answers to questions relative to her physical condition and prior medical treatment for diabetes; that it had not discovered the alleged fraud until after receipt of the proofs of death in the latter part of January, 1933; and that it thereupon refused payment upon the policy and tendered return of the premiums in the amount of $75.20.

The court below, in an opinion by CRANE, J., held the incontestable clause precluded the defendant company from setting up the defense upon which it relied and entered judgment in favor of the beneficiaries in the sum of $1,015.

Therefore, the sole question involved upon this appeal is whether the two year limitation in the incontestable clause—which expired prior to the refusal of the insurer to make payment under the policy, but after the death of the insured,—operates as a bar to the defense set up in the affidavit.

We have no appellate decision in this state in a case involving an incontestable clause drawn in language exactly equivalent to the one now before us and in which the insured died prior to the expiration of the designated period, but we have a number of opinions defining the general purpose and effect of such clauses and the rights ordinarily accruing to beneficiaries thereunder.

In Feierman v. Eureka Life Ins. Co., 279 Pa. 507, 124 A. 171, the policy provided that it should be "incontestable after two years from the date of issue" and the death of the insured occurred within that period. In holding that the clause operated to bar

a defense based upon alleged misrepresentations made by the insured, Mr. Justice KEPHART said:

"...... We now have the question whether death fixes all rights of the parties under the policy.

"The great weight of authority supports the position that the insurer must at least disavow liability within the contestable period to be relieved,—not necessarily by legal action, but some definite step, specifying the ground of complaint, in such form as to effect a cancellation of the contract.

"The clause means precisely what its language states: the policy will not be challenged, opposed or litigated, and is indisputable after two years. During this period, the company may contest it for any sufficient reason. The incontestable clause is for the benefit of the insurer, in that it induces people to insure in the company, and requires no act of the insured to put it in motion or aid in the discovery of facts on which it may fasten to the insurer's benefit. Therefore insured's death within the time does not stop investigation or relieve of the duty to investigate false representations or other fraudulent circumstances on which the policy is based. The knowledge that false representations have been made must be ascertained within the two years, and, in the same time, the company, by some act, must rescind, cancel or notify the insured or the beneficiary that it will no longer be bound by the policy.

"While it is true a cause of action arises at the death of the insured, the terms of the policy are not changed; and, though payment of the insurance money is the result of death, and payment of premium ceases, the incontestable stipulation is not affected; it survives and continues in unbroken force until it expires by its own limitation, two years from the date of issue. The insurer is not placed at any disadvantage; its

position is not in the slightest degree affected. It is in precisely the same position as if the insured had lived during the two years. Had the policy read, two years from the date thereof, 'provided the insured does not die within the two years,' a different question would be presented.''

Reference may also be made to Central Trust Company v. Fidelity Mutual Life Insurance Company, 45 Pa. Superior Ct. 313, cited by the Supreme Court in the opinion from which we have just quoted, in which it is stated that the purpose of such clauses is not to preclude inquiry into the truthfulness or good faith of the statements made in the application but to fix a time within which such inquiry shall be made. In his opinion in the Central Trust Company case, RICE, P. J., quoted the following from Murray v. State Mutual Life Assurance Co., 22 R. I. 524; 53 L. R. A. 742, as the substance of the proposition on the part of the insurer to the insured: "We will take two years in which to ascertain whether your representations are false or not, and whether you have been guilty of any fraud in obtaining the policy; and if, within that period, we cannot detect any such falsity or fraud, we will obligate ourselves to make no further inquiry, and to make no defense on account of them." (See to the same effect Lawler v. Home Life Insurance Co. of America, 59 Pa. Superior Ct. 409.)

None of these cases is decisive of the one now at bar; in the Central Trust Company and Lawler cases death did not occur until after the expiration of the period, and in the Feierman case the clause did not contain the provision, *"in force* for a period of two years."

The learned counsel for appellant contends it was error to hold that "the incontestable period continued to run after the insured's death." His position is

clearly and forcibly stated in the following quotation from his brief:

"The clear and unambiguous meaning is that the policy must remain *in force* as a policy of insurance for two years before the limitation of defenses can become operative. It is obvious that the policy is no longer in force after the death of the insured for the simple reason that the time of occurrence of the event insured against is no longer conjectural but has become an accomplished fact. In place of a policy of insurance, presently in force, there has arisen a liquidated claim against the insurer, subject to any valid defenses which may be interposed, thus, not having remained in force as a policy of insurance for the stipulated period, the limitation of the provision never came into effect."

We do not agree with this construction of the clause. A contract is "in force" until it is cancelled or until there has been complete performance. This is the common understanding of the term. The policy of insurance is nothing but a contract to pay money to the beneficiaries named therein, upon the death of the insured. It is therefore "in force" until payment has been made. The death of the insured is the condition which matures the obligation, but it does not terminate the contract. The distinction suggested between a "policy of insurance, presently in force" and "a liquidated claim," is, we think, misleading and incorrect. There is but one contract in the case, and it is still in existence until the claim is paid. The liquidated claim is the consideration stipulated in the policy contract. Indeed, if it were necessary to labor the point, it might be pointed out that, even after the insured has died, the obligation on the part of the company to pay is not strictly due until proofs of death are filed.

Appellant has cited several cases from other juris-

dictions which take a contrary view, but, in our opinion, none of them contains convincing reasons. The rules under the Federal War Risk Insurance Act—which hold that policies issued thereunder are open to contest when they mature within the incontestable period—are expressly declared to be based, not upon legal analysis, but upon the intent of Congress as gathered from the Committee Report of the House of Representatives. (See Jordan v. United States, 36 Fed. 2d 43, C. C. A. 9.) Otherwise, the higher Federal Courts seem to agree with our reasoning. The precise issue was raised and decided in favor of the beneficiaries in Jefferson Life Insurance Co. v. McIntyre, 294 Fed. 887, C. C. A. 5. Again, in Mutual Life Insurance Co. v. Hurni Packing Co., 263 U. S. 167 (construing an incontestable clause identical to that in the Feierman case) it was also held that the clause was operative despite the death of the insured within the period of limitation. While the United States Supreme Court confined its decision to the facts of the case and refused to consider whether the use of the words, "in force," would have warranted a different decision, the language used is equally fatal to appellant's argument. It was there said (p. 176):

"The argument advanced in support of the second ground relied upon for reversal, in substance, is that a policy of insurance necessarily imports a risk and where there is no risk there can be no insurance; that when the insured dies what had been a hazard has become a certainty and that the obligation then is no longer of insurance but of payment; that by the incontestability clause the undertaking is that after two years, provided the risk continues to be insured against for the period, the insurer will make no defense against a claim under the policy; but that if the risk does not continue for two years (that is, if the insured dies in the meantime) the incontestability

clause is not applicable. Only in the event of the death of the insured after two years, it is said, will the obligation to pay become absolute. The argument is ingenious but fallacious, since it ignores the fundamental purpose of all simple life insurance, which is not to enrich the insured but to secure the beneficiary, who has, therefore, a real, albeit sometimes only a contingent, interest in the policy.

"It is true, as counsel for petitioner contends, that the contract is with the insured and not with the beneficiary but, nevertheless, it is for the use of the beneficiary and there is no reason to say that the incontestability clause is not meant for his benefit as well as for the benefit of the insured. It is for the benefit of the insured during his lifetime and upon his death immediately inures to the benefit of the beneficiary."

As has been indicated, the words "in force" do not present a problem for neat legal dissection, but should be given a common sense construction, having in mind the nature and purpose of the contract in which they are used. It is, however, significant to note the uniform provision for an incontestable clause prescribed by the Insurance Act of May 17, 1921, P. L. 682. This provides, in Article IV, Section 410, (P. L. 720) that:

"No policy of life or endowment insurance ...... shall be issued ....... unless it contains, in substance, the following provisions ...... (c) a provision that the policy shall be incontestable after it has been in force, during the lifetime of the insured, two years from its date of issue ......"

This provision has been in the law of this state for thirteen years. Had appellant so desired, it could have incorporated the provision in its policy, and thus made its position clear beyond argument. It seems that the legislature considered it necessary to add the

words "during the lifetime of the insured" as a qualification to the words "in force."

For some reason, not clearly apparent, appellant, in drafting the policy now in suit, used neither the form of incontestability clause construed in the Feierman case nor that prescribed by our statute. If, by inserting the words "in force" and omitting "during the lifetime of the insured," it has created an ambiguity, it must accept responsibility for writing a contract which requires interpretation.

If this clause is fairly susceptible of two different constructions, we are required, by the familiar rule, to adopt the one most favorable to the beneficiaries.

The conclusion of a majority of the members of this court is that the case was correctly disposed of by the court below.

Judgment affirmed.